Opinion delivered May 7, 1887.

| 23 | 357 |
| 29 | 356 |
| 23 | 357 |
| 31 | 243 |
| 32 | 535 |

No. 5364.

## R. S. SMITH *v.* THE STATE.

1. ARSON—INTENT—CASE STATED—CHARGE OF THE COURT—CASE OVERRULED.—Under the Penal Code of this State the willful burning of any "house" is arson, and a house is any building, edifice or structure en-

closed with walls and covered, whatever the materials used for building. Though the house be neither destroyed nor seriou ˙ injured, the "burning" is complete when the fire has communicated to it, and, if the burning was designed, it is immaterial by what means the fire was communicated. Appellant, while confined in the wooden prison of a county poor farm, set fire to the roof of the prison, burning a hole therein. Being tried for arson, there was no evidence tending to disclose with what intent he set fire to the building. To the charge given by the trial court to the jury the defense objected, in substance, because it did not instruct for an acquittal if the appellant's intent was to effect an escape, and not to consume or injure the building. *Held*, on a review of both elementary and adjudicated authority, that the exception to the charge was not well taken. Delaney's case, 41 Texas, 601, is overruled on this point.

2. ACCOMPLICE TESTIMONY.—Concealment of knowledge that a felony is to be committed does not make the party concealing it an accomplice or a *particeps criminis*, and therefore does not necessitate corroboration of his testimony inculpatory of the accused.

APPEAL from the District Court of Parker. Tried below before the Hon. R. E. Beckham.

The indictment charged that the appellant, on December 5, 1886, did "unlawfully, willfully and feloniously set fire to and burn a certain house, to-wit, a house then and there known as the Parker county poor farm prison, the property of Parker county, there situate ; contrary," etc.

The jury found appellant guilty, and assessed his punishment at five years in the penitentiary.

William Rigney, for the State, testified that on Sunday, December 5, 1886, he and A. L. Phillips and Smith, the defendant, were confined in the Parker county poor farm prison, about four miles south of Weatherford, to which they had been sent to work out fines and costs for misdemeanors. The prison was a log house with walls, a shingle roof, and two side rooms. Witness and his two fellow prisoners were locked up in the iron cage, which stood in front of the fire place in the main room, and two or three feet from the fire place. About nine or ten o'clock in the forenoon of said day, witness, who was sitting in the corner of the cage next the fire, reading a newspaper, observed the defendant come from the west end of the cage with a broom in his hand, and some cotton fastened on the end of the broom handle. Witness supposed the defendant got the cotton from one of the three matresses which were in the cage. Having frequently seen defendant stick things in the fire to get a light for his pipe,

the witness thought nothing of it at the moment, and had no idea that defendant intended to set fire to the house. Defendant came and stood by where the witness was reading, and put the end of the broom, with the cotton on it, into the fire until it caught, and then stuck it up through the top of the cage to the roof of the house until the shingles caught on fire and commenced to blaze. Witness afterwards saw some of the shingles, and observed that they were charred and burnt. It was but a minute or two after the shingles caught fire when Mr. Abbott, the keeper of the poor farm, and Clif Abbott, the guard, ran down there and put out the fire. Clif Abbott climbed upon the roof and tore off the burning shingles, which made a hole in the roof. Mr. Abbott's house was about one hundred or one hundred and fifty yards from the prison.

Cross examined, the witness said he had been sent to the poor farm to work out a fine of one hundred dollars, and costs of the case, and that he had previously "laid out" a little of the amount in the jail. He had been at the poor farm a little more than a month, and knew that a prisoner was allowed three dollars per day in the jail and only one dollar per day at the poor farm, so that it would take three times as long to work out his fine on the farm as it would to "lay" it out in jail. When defendant stuck the broom in the fire, the witness did not try to stop him, nor pay much attention to him, and neither asked him what he was doing nor said anything to him or Phillips. Witness did not know what the defendant was going to do. There was no agreement between them to set fire to the house to try to get out. Witness gave no fire alarm; he "knew they would see it." Being locked up in the cage, witness and the other inmates, if the house had burned, would have burned also, unless released from the cage. If they could have got out of the cage, they could have got out of the house, the door of which was not locked. Witness had worked out the most of his fine and costs, and the commissioners court had released him from the balance.

A. L. Phillips, for the State, testified substantially as did the witness Rigney, and further stated that he, feeling unwell, was fixing to go to bed when he saw the defendant get a piece of wire from the lamp shelf and some cotton from a hole in his mattress, and saw him fasten the cotton on the broom handle by wrapping the cotton around the broom handle and then wrapping the wire around the cotton, after which he stuck it to the fire through the bars of the cage, and then through the top of

the cage to the roof of the house. Witness thought nothing of the defendant's movements until the latter stuck the fire to the roof, when, of course, he knew defendant was trying to set fire to the house. A day or two afterwards "we" were talking about it inside of the cage, and the witness asked defendant what he was going to say when "they" asked him about setting fire to the house, and he replied that "there was no use for him to deny it, for he knew Mr. Abbott saw him, and there was no use for him to tell a lie about it."

Cross examined, the witness said he had been sent to the poor farm to work out a fine of five hundred dollars and costs, and that he had worked out and "laid" out about one hundred and seventy days of his time, and had been released on a petition circulated in his behalf. He thought the defendant had about eighty days to work out. The witness denied that he had told Bird Carroll and Hill Simpson, in the county jail, a short time before he was taken to the poor farm, that when "they" put him in there he would either burn the d—n prison house or blow it up with powder, so that the officers would have to bring him back to the county jail and allow him three dollars a day instead of one dollar. He admitted that he took with him to the poor farm a tobacco bag of powder, which had been given him in the jail, but said he took it along for no particular purpose, and afterwards gave it to Mr. Clif Abbott when the latter was searching the cell. Witness knew that if the house was burned he and the other two prisoners would be burned unless they should be taken out; but he gave no alarm of fire, and did nothing to prevent the defendant from setting fire to the house.

Clifton Abbott, for the State, testified that he was guard for the convicts at the Parker county poor farm. When not at work, the prisoners were locked up in the cell within the house, but the house was not kept locked. On December 5, 1886, the witness and George Abbott (his uncle and the "keeper") were sitting on the gallery of their house, about one hundred yards from the prison, when they noticed a blaze issuing from the roof of the prison house. George Abbott ran to the door of the prison, and witness climbed up on the roof and put out the fire by tearing off and throwing down the burning shingles. Neither the witness nor George Abbott saw who set fire to the roof. A small hole was burned through the roof, and the shingles were blazing when witness reached them. Phillips and Rigney are white men, and are as intelligent as the defendant, who is an

intelligent man and nearly white, though he passes for a negro. A day or two after the fire, witness, while listening outside of the prison, overheard the defendant, who was inside, acknowledge and say that he set fire to the house and was not going to tell any lie about it, for "they" knew that he did do it. Witness knew the defendant's voice well, and knew that it was defendant who so expressed himself to Phillips.

Judge I. N. Roach, for the State, testified that the house in question was situated four miles south of Weatherford, and was known as the Parker county poor farm prison. On December 5, 1886, it was, and still is, the property of Parker county.

The State closed.

Bud Carroll, for the defense, testified that he was an inmate of the Parker county jail, awaiting his trial. Some time in November, 1886, the officers took the defendant, and also Phillips and Rigney from the jail to the poor farm. Prior to that, the witness heard Phillips say that if they put him on the poor farm he would either blow the d—n thing up or blow the lock off, and that he wouldn't stay down there. This was said in the cell up stairs in the jail, and witness thought no one heard it but himself. When Phillips was taken off he put some powder in his pocket and carried it with him.

H. Simpson, for the defense, testified that he was confined along with A. L. Phillips in the Parker county jail, about November, 1886. When the officers came for Phillips, he put a package of powder in his pocket and said he would blow the prison up, or would blow the lock off.

*H. W. Kuteman*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant was indicted for, and has been convicted of, arson, the house charged to have been burned being described as "a certain house then and there known as the Parker county poor farm prison, the property of Parker county."

Appellant and two other parties, who had been convicted and fined for misdemeanors, were sent to the poor farm to work out their fines. When not at work they were confined in an iron cage in the prison, which prison was a wooden building. On the day in question, whilst the prisoners were in the iron cage,

appellant wrapped some cotton taken from a mattress around a broom handle, ran the same through the bars of the cage into the fire in the fire place, and, when the cotton was sufficiently ignited, drew it back into the cage, and then ran it through the bars in the top of the cage and held it to the roof of the house, overhead, until the shingles caught fire and were burning—a hole having been burnt through the roof before the same was extinguished by the keeper of the prison. Defendant's intent in setting fire to the house is not positvely proven, nor was anything said by him at the time which tended to show the intent and purpose beyond what his acts indicated. The other prisoners did and said nothing at the time, but as witnesses on the trial denied any complicity in the matter, though admitting that they did not attempt to interfere with or prevent defendant in his endeavors.

There is but a single bill of exceptions in the record, and that relates to omissions in the charge of the court to the jury with regard to two supposed essential features of the case, as made by the evidence. It is insisted that, inasmuch as the evidence leaves the motive and intent in doubt, and inasmuch as his intent and purpose in setting fire to the building might have been for the purpose of effecting his escape from prison, and not with any other willful or fraudulent intent, the court should have instructed the jury that if escape was the sole object, then defendant could not be convicted. The other objection to the charge is that it failed to instruct the jury upon the law of accomplice testimony, with reference to the evidence of his two fellow prisoners given against him at the trial.

Under our statute arson is the willful burning of any house, and a "house" is any building, edifice or structure enclosed with walls and covered, whatever may be the materials used for building. (Penal Code, arts. 679 and 680.) The burning is complete when the fire has actually communicated to a house, though it may neither be destroyed nor seriously injured; and it is of no consequence by what means the fire is communicated to a house, if the burning is designed. (Penal Code, arts., 684 and 685.)

In his work on Statutory Crimes, Mr. Bishop says: "A jail is held to be an inhabited dwelling house within the statutes against arson of such houses." (Bish. Stat. Crimes, 2 ed., sec. 207.) In Delaney v. The State, 41 Texas, 601, it is said by Roberts, C. J.: "Arson is the willful burning of a house. The

house need not be consumed with fire to constitute the offense. It will be sufficient to show that a person set fire to the house to the extent that some part of the house was on fire, unless it is made clearly to appear that it was accidental or was done for some other object wholly different from the intention to burn up or consume the house. If, for instance, it appeared from the evidence that a person confined in prison set fire to the door to burn off the lock, so as to make his escape, or that he burned a hole in the floor or in the wall for the same purpose, it would not be arson. So it has been held by the courts of other States. (The people v. Cotteral et al., 18 Johns., 115; State v. Mitchell, 5 Ired., 350.)

"If, however, a prisoner, or a number of prisoners in concert, should set fire to a jail without such definite purpose, but for the purpose of burning the jail sufficiently to produce the alarm of fire, and in the consequent confusion make an escape, being at the same time indifferent as to whether the jail was consumed or not, that would be arson."

In his work on Criminal Law, Mr. Bishop thus discusses the question: "If a prisoner burns a hole in his cell, or otherwise burns the building in which he is confined, not from a desire to consume the building, but to effect his escape, his offense must be, according to the foregoing doctrines, arson; and so it has been held. On the other hand, the contrary has also been held; and unhappily, on this side are the majority of cases. One learned judge, after yielding to the authorities which sustain this view, added: 'If, however, a prisoner, or a number of prisoners in concert, should set fire to a jail without such definite purpose, but for the purpose of burning the jail sufficiently to produce the alarm of fire, and in the consequent confusion make an escape, being at the same time indifferent as to whether the jail was consumed or not, that would be arson.' (41 Texas, supra.) It is difficult to see why this admission should not carry with it the entire better doctrine." (2 Bish. Crim. Law, 7 ed., sec. 15.)

Where the doctrine stated in Delaney's case is cited in the text of Wharton's Criminal Law (7 ed., sec. 829), the learned author in a note upon the subject says: "But, as a jail is a house in the sense in which the term is used in arson, this view can not be harmonized with other recent cases." (See Com. v. Posey, 4 Cal., 109; Stevens v. Com., 4 Leigh, 683; Luker v. The State, 49 Ala., 30.)

In Lockett v. The State, 63 Alabama, 5, the rule announced is: "If a prisoner confined in a county jail set fire to the building with the intent only to burn a hole through which he may escape, not intending that the building should be further damaged, he is guilty of arson."

In view of these authorities we are of opinion that the doctrine announced in Delaney's case, to the effect that if a prisoner willfully fire a jail for the purpose of making his escape, with no design of burning the house down, should be overruled, and the same will be considered hereafter as overruled. Such being our view of the law in this case, it was not error in the learned trial judge to omit so to instruct the jury in this case.

As to the second ground of objection to the charge, we do not think that the testimony adduced establishes the fact that the two State's witnesses who were confined with the defendant in the iron cage at the time of the burning were either accessories or accomplices, nor does it make them *particeps criminis.* Concealment of knowledge that a felony is to be committed does not make the party concealing it a *particeps criminis,* nor necessitate a corroboration of his testimony. (Noftsinger v. The State, 7 Texas Ct. App., 302; Rucker v. The State, Id., 550.)

Finding no reversible error in the transcript of this case, the judgment is affirmed.

*Affirmed.*