DORROH *v.* STATE

No. 40256          November 26, 1956          90 So. 2d 653

*Holloman & Threadgill, Sims & Sims,* Columbus, for appellant.

J. R. *Griffin, Asst. Atty. Gen.*, Jackson, for appellee.

ROBERDS, P. J.

Dorroh, the appellant, was convicted of second degree arson and sentenced to the state penitentiary for seven and a half years. Section 2007, Mississippi ·Code of 1942. The property involved was a barn and a separate, but nearby, tool shed. The property belonged to A. G. Godwin.

■■ ■ Dorroh, on this appeal, contends the verdict of the jury was against the great weight of the evidence—so much so that we should reverse and remand the case for another trial.

The testimony on behalf of the state showed, in substance, that Godwin and Dorroh lived in the same neighborhood; that they had known each other some ten years; that intense enmity and personal dislike existed between them; that Dorroh had several times trespassed upon the lands of Godwin; that Godwin had caused Dorroh to be arrested and fined for such trespasses, and that Dorroh had made threats against Godwin and his property, describing Godwin by use of the vilest kind of language.

A witness, shown to have been a servant and friend of Dorroh's frankly testified that he was with Dorroh about midnight of November 14, 1954, when the fire took place, and that he saw Dorroh set the barn on fire and then drag from the barn to the tool shed a bale of straw, which he had lighted at the barn fire, and which he placed in the shed in an effort to burn the shed and the machinery and tools therein. The barn was entirely consumed by the fire and the shed and tools therein partly so. The evidence of the State discloses dire threats by Dorroh about, and to, this witness if he testified against appellant. The state had other evidence we deem unnecessary to detail.

Dorroh testified himself and introduced two other witnesses. He denied any participation in the crime and denied he made threats against Godwin, owner of the

property, and the main witness of the State. He said that on the night of the fire he was fishing in Tombigbee River and did not leave the fishing camp until around seven o'clock Sunday morning after the fire had occurred shortly after twelve o'clock Saturday night. He admitted the three trespasses on the lands of Godwin and that he had paid fines therefor, and, in effect, admitted his strong enmity towards Godwin. He also admitted he had been convicted of numerous other crimes, one of which being the impersonation of a federal officer.

One of his other witnesses testified that he was with Dorroh at the fishing camp all night the night the property burned and that Dorroh could not have burned the property. He admitted, however, that on the morning of the trial, when he was being examined for jury service in this case against Dorroh, that he told the presiding judge he knew nothing of the facts of the case.

The other witness was a half brother of the one just mentioned. He also said he was with Dorroh at the fishing camp the night of the fire and that Dorroh could not have burned the property. However, he was asked if he did not tell the sheriff, the district attorney and a representative of the State Fire Marshal's office, in a conference on the morning of the trial, that he didn't know whether the fishing venture was the night of the fire or some other night, and he replied, "I probably made that statement then."

We have detailed sufficient of the evidence to demonstrate, we think, that the guilt or innocence of Dorroh was a matter for the jury. All of the witnesses, except the fire marshal, resided and lived in Lowndes County, where the case was being tried and from which the trial jurors were drawn. Doubtless personal acquaintance existed between all or some of the witnesses and the jurors. The jurors saw the actions and heard the witnesses testify. The circumstances here disclose a typical case vesting in the trial jurors, under our judicial sys-

tem, the function and duty to pass upon the veracity of the witnesses and weigh the testimony given by them.

The indictment did not specifically say that at the time Dorroh set fire to the buildings that he intended to burn them. Dorroh says that, for that reason, the indictment charged no crime.

Section 2007, said Code, defining second degree arson, under which this prosecution took place, provides that "Any person who wilfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels, or procures the burning of any building or structure of whatever class or character * * * " not included within the next preceding section, which defines first degree arson, "shall be guilty of arson in the second degree and upon conviction thereof, be sentenced to the state penitentiary for not less than one nor more than ten years."

The indictment herein charged that Dorroh, within the jurisdiction of the court, on a named date, "did then and there unlawfully, maliciously, and feloniously set fire to and burn in the night time * * " the two buildings here involved, describing them, and giving their locations, said buildings being then owned by A. G. Godwin, and then charged that " * * the said unlawful, wilful, malicious, and felonious setting fire to and burning of said buildings by him, the said Fred Dorroh, being then and there with the unlawful, wilful, malicious, and felonious intent to injure and prejudice * * " the owner of the buildings.

██ ██ It will be noted that the statute does not expressly require that the indictment shall specifically use the word "intent" in charging the crime. The indictment here charged the crime in the words of the statute defining it. And we think the indictment charged, as a necessary inference from the words used, that Dorroh intended to burn the buildings. It says that Dorroh set fire to and burned the building "unlawfully, wilfully, maliciously and feloniously" and he did so with the

"wilful, malicious, and felonious intent to injure and prejudice * * '' the owner. ■■ The charge that one wilfully did an act is to charge he intended doing such act. In 94 C. J. S., page 624, it is said: ''The words '•wilful' and 'wilfully' imply such elements as design, intent, and purpose, deliberation, determination, and premeditation, and they are commonly employed to denote an act which is wrongful or prohibited by law, and also to indicate the intentional and deliberate doing of a wrongful act, the doing of a forbidden act purposely in violation of law''. Again, in the same authority, at page 620, it is said ''The words 'wilful' and 'wilfully' are of familiar use in every branch of the law, being commonly employed in averring or describing an act, or in denoting the quality of the act, or describing the intent with which an act is done * * * ''.

In Ousley v. State, 154 Miss. 451, 122 So. 731, this Court said: ''In an indictment charging a wilful killing, it means intentionally and not by accident.'' The words used in this indictment necessarily charged the accused intended to burn the buildings.

■■ Appellant says the instructions granted the State did not correctly inform the jury of the elements of the crime in that they failed to expressly and specifically require the jury to find the accused had the intent to burn the buildings. This is the same contention, directed to the instructions, as was made to the indictment. The instructions followed the wording of the indictment and of the statute. What we have said with reference to the indictment applies to the instructions granted the state. However, as applied to the instructions, there is this to be further said: The instructions asked for and granted to the accused proceeded upon the assumption that the words used in the indictment and in the instructions granted the State were sufficient to describe the crime and to inform the jury of its elements. To illustrate: one instruction granted the accused said

that before the jurors could " * * convict him of the crime of arson, as is charged in the indictment, that they must believe beyond all reasonable doubt that he set fire to the barns, or out buildings of A. G. Godwin, and that the burning was malicious, unlawful and felonious".

Another instruction requested by and granted to the defendant reads "The court instructs the jury for the defendant that unless you believe from the evidence beyond a reasonable doubt that the defendant burned the barns as testified to and as alleged in the indictment that you cannot convict the defendant". Thus it is seen that defendant assumed if the jury believed beyond a reasonable doubt from the evidence facts as required by the wording in the indictment they would find defendant guilty.

It is urged that the district attorney, in his examination of the State's witnesses, used language indicating that the barn here involved was so connected with the residence as to make its burning first degree arson under Section 2006, said Code, instead of second degree arson, for which defendant was indicted and was being tried. The contention is not well taken for two reasons: First, no objections to the use of the word "barn" in referring to the larger building that was burned, were made while the witnesses were being examined and the defense attorney referred to the building as a barn in his cross examination; and, second, there is no dispute in the evidence whatever that the barn here involved was located some two hundred and fifty yards from the residence. There was no connection whatever between the barn and the residence, as is required under Section 2006, defining first degree arson.

As heretofore stated in this opinion, the defendant admitted he had been convicted a number of times of different crimes. It is urged that the district attorney went beyond permissible grounds in showing former convictions. Defendant took the stand as a wit-

ness. He thereby subjected himself to cross-examination, and made competent his own testimony, or any other admissible evidence tending to estabilsh his former convictions of crimes. Section 1693, Code of 1942. The cross-examination of defendant indicates he was reluctant to disclose all the criminal offenses of which he had been convicted. It was necessary for the district attorney to press him to obtain the information. This the district attorney had the right to do, as was reasonably necessary. We have not found that objection was made to the cross-examination on this ground. Able counsel representing appellant in this Court do not appear to have been of counsel in the trial court.

In addition to the right to prove former convictions as provided in said Section 1693, testimony establishing that Godwin had prosecuted Dorroh, was competent as showing a motive on the part of Dorroh for burning the property of Godwin.

Dorroh urges grounds for reversal other than those specifically discussed. We have examined them and do not think they are well taken. This record discloses he had a fair trial, and all of his rights were protected.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie,* JJ., concur.