**UNITED STATES, Appellee,**

v.

**Pablo ACEVEDO–VELEZ, Private, U.S. Army, Appellant.**

No. 43,745.

CM 441386.

U.S. Court of Military Appeals.

Dec. 5, 1983.

---

For Appellant: *Captain Edmund S. Bloom, Jr.* (argued); *Lieutenant Colonel R. Rex Brookshire, II, Major Lawrence F. Klar* (on brief); *Colonel William G. Eckhardt, Major Raymond C. Ruppert, Captain Donna L. Chapin.*

For Appellee: *Captain David A. Brown* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Glenn D. Gillett* (on brief); *Colonel James Kucera, Major Thomas M. Curtis, Captain Kenneth H. Clevenger.*

## Opinion of the Court

EVERETT, Chief Judge:

Consistent with his pleas of guilty, appellant was convicted by a military judge, sitting as a general court-martial, on a charge of arson with three specifications, in violation of Article 126, Uniform Code of Military Justice, 10 U.S.C. § 926. The first specification alleged that at about 3:00 a.m., May 8, 1981, appellant "willfully and maliciously set on fire an inhabitated [sic] dwelling"—namely, an Army barracks. The other two specifications alleged that twenty minutes before, he had "willfully and maliciously set fire to a dumpster" and "a hanging curtain." The judge sentenced appellant to a bad-conduct discharge, confinement for 18 months, total forfeitures, and reduction to the grade of E–1. The convening authority reduced the confinement to 8 months but otherwise approved the findings and sentence. The United States Army Court of Military Review affirmed. Our grant of review concerned the providence of the plea of guilty to the specification alleging arson of the barracks. 14 M.J. 209–10 (1982).

### I

During the providence inquiry, appellant revealed that he had been drinking beer and wine in his barracks room and elsewhere. "Then I go back to the Company. I got matches and I go to the dumpster, and I set fire to the dumpster." He did this "intentionally," because he "was mad." Later he went "to the Aid Station window. I climb to the ledge, the window was open. I lit a match and I put it in the curtain." This also was done "intentionally."

At that point, appellant went back to his room; "look[ed] out the window and" saw that

the fire was getting more big, and I go to the CQ and I say, "There is a fire in the back of the building, in the dumpster,"

then me and him grab a fire extinguisher and go over there and put the dumpster out, put the fire out, and then when we put the fire out, I say to him, "There's another fire in the Aid Station," and we go over there and put the fire out in the Aid Station.

Thereafter, appellant returned to his barracks and went to the basement, where an office door was open. "There was a field jacket on a coat rack, hanging, I set that field jacket on fire." Appellant returned to his room and waited, after which he went back "downstairs, and the CQ say he smell smoke. Then we go downstairs to the basement, you know. There was coming smoke out of the stairs, and we go downstairs and try to put the fire out, but we can't; there was too much smoke." Ultimately, the barracks was damaged by the fire appellant had set.

According to appellant, he had not "intend[ed] to burn the building," but he had realized "that by setting fire to that coat that there was a great possibility that the building would catch on fire." Appellate defense counsel now contend that, because appellant stated he had not intended to burn the building, his plea of guilty of aggravated arson was improvident and should have been rejected.

## II

Article 126 of the Uniform Code prohibits two types of arson. Aggravated arson occurs when a servicemember "willfully and maliciously burns or sets on fire an inhabited dwelling, or any other structure, movable or immovable, wherein to the knowledge of the offender there is at the time a human being." Article 126(a). Simple arson is committed by a servicemember "who willfully and maliciously burns or sets fire to the property of another." Article 126(b). The penalty for aggravated arson may be severe—up to 20 years' confinement. *See* Table of Maximum Punishments, para. 127 *c,* Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, if one "engaged in the perpetration or attempted perpetration of . . . aggravated ar-

son" "unlawfully kills a human being," "he shall suffer death or imprisonment for life as a court-martial may direct." Article 118, UCMJ, 10 U.S.C. § 918. For simple arson, the maximum punishment is 10 years' confinement where the property burned has a value of more than $100.00, and only 1 year if the property has a value of $100.00 or less.

More than a decade ago this Court was called upon to decide whether simple arson required a specific intent. *See United States v. Greene,* 20 U.S.C.M.A. 297, 43 C.M.R. 137 (1971). Especially inasmuch as Congress had used the term "willfully" in its definition of arson, we concluded that specific intent was required. Therefore, because evidence had reasonably raised the possibility that Greene was voluntarily intoxicated at the time of his act, a majority of this Court held that it was prejudicial error for the law officer to fail to instruct the members on voluntary intoxication as an affirmative defense to the specific-intent element. Judge Darden filed a forceful dissenting opinion.

Since Congress also used the same words —"willfully and maliciously"—in defining aggravated arson, the holding in *Greene* would require us to treat this offense, too, as one which requires specific intent. However, the Government urges that we should adopt the view of Judge Darden and overrule that holding. In considering this contention, we must examine the history of arson in the civil courts and in the military justice system.

### A. Treatment of Arson in the Civil Courts

At common law, arson was defined as "the wilful and malicious burning of the dwelling house of another." Wharton's *Criminal Law* § 345 (C. Torcia 14th ed. 1980); *see* 6A C.J.S. Arson § 2; 5 Am Jur 2d, Arson § 1; 4 W. Blackstone, *Commentaries on the Laws of England* 222 (1769); W. Winthrop, *Military Law and Precedents* 680–82 (2d ed. 1920 Reprint). This crime required only a general, rather than a specific, intent. *See, e.g., DeBettencourt v. State,* 48 Md.App. 522, 428 A.2d 479 (1981);

*State v. Jones,* 300 N.C. 363, 266 S.E.2d 586 (1980); *State v. Doyon,* 416 A.2d 130 (R.I. 1980); *State v. Scott,* 118 Ariz. 383, 576 P.2d 1383 (App.1978); *State v. Kinlaw,* 150 N.J.Super. 70, 374 A.2d 1233 (1977); *State v. O'Farrell,* 355 A.2d 396 (Me.1976); *Dorroh v. State,* 229 Miss. 315, 90 So.2d 653 (1956); *Crow v. State,* 136 Tenn. 333, 189 S.W. 687 (1916); Blackstone, 5 Am.Jur., and 6A C.J.S., all *supra;* Wharton, *supra,* § 348; 3 Burdick, Criminal Law §§ 691–92 (1946). As was explained in *State v. Scott, supra* at 1385:

> To be a wilful and malicious burning in the law of arson, the burning must simply be done voluntarily and without excuse or justification ... Arson is a crime of general, rather than specific intent and the requirement that the defendant act "wilfully and maliciously" does not mean that the defendant must have an actual subjective purpose that the act he does intentionally shall produce either a (1) setting afire or burning of the structure, or (2) damage to or destruction of said structure .... [T]he word "wilfully" does not add a specific intent element. "Wilfully" means intentionally as distinguished from accidentally or involuntarily and "maliciously" means that state of mind which activates conduct injurious to others without lawful reason, cause or excuse.

Over the years many states have broadened the scope of arson to include structures other than dwelling houses and property other than structures. Often this expansion was accompanied by the specification of different degrees of arson.

However, when the Uniform Code of Military Justice was adopted, most states were still using common-law language to describe arson and related offenses. At that time North Carolina did not even seek to define the common-law crime of arson, but merely provided for its punishment.[1] Our research indicates that Alaska, Hawaii, and 36 states prohibited "willful and malicious" burnings.[2] Under this language, arson was treated by the courts as a general-intent offense, even when the statute encompassed the burning of property or structures other than dwelling houses.[3] Ten states [4] and the District of Columbia had statutes which used either "willfully" or "maliciously" but not both. Under those statutes, judges also usually treated arson as a general-intent offense.[5] Until 1943, Louisiana employed the common-law language of "willful and malicious" in defining arson; but then it redefined aggravated arson as "the intentional damaging by any explosive substance or the setting fire to any structure, watercraft or movable whereby it is foreseeable that human life might be endangered." Louisiana Rev.Stat. § 14:51. However, another Louisiana statute stated that "[i]n the absence of qualifying provisions, the terms 'intent' and 'inten-

---

1. Other types of burnings were separately prohibited; and the language of these North Carolina statutes did not always follow the language of the common law.

2. Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and Wyoming. Oklahoma not only had an arson statute which used the common-law terms, but also another statute which provided that no crime was committed absent intent to destroy the building. Oklahoma Stat., § 1849 (1931). However, even this statute was interpreted to require only a general intent.

*Rogers v. State,* 57 Okl.Cr. 294, 48 P.2d 344 (1935).

3. *See, e.g., People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975); *People v. Alexander,* 182 Cal. App.2d 281, 6 Cal.Rptr. 153 (1960); *People v. Woods,* 157 Cal.App.2d 617, 321 P.2d 477 (1958).

4. Alabama, Kansas, Michigan, Missouri, New York; Rhode Island (maliciously); South Dakota, Texas; Virginia (maliciously); and Washington.

5. *E.g., State v. Nelson,* 17 Wash.App. 66, 561 P.2d 1093 (1977); *Morris v. State,* 124 Ala. 44, 27 So. 336 (1899); *Smith v. State,* 23 Tex.App. 357, 5 S.W. 219 (1887); *People v. Cotteral,* 18 Johns 115 (N.Y.1820).

tional' have reference to general criminal intent." Louisiana Rev.Stat. § 14:11.

In more recent times—subsequent to enactment of the Uniform Code—many states have changed their statutes in ways that would appear to make arson a crime of specific intent. For example, soon after the decision in *State v. Scott, supra,* Arizona enacted a statute providing that "[a] person commits arson of an occupied structure by intentionally and unlawfully damaging an occupied structure by knowingly causing a fire or explosion." Arizona Rev.Stats. Ann. § 13–1704 (1980). Alabama changed its law to read that "[a] person commits the crime of arson in the first degree if he intentionally damages a building by starting or maintaining a fire." Code of Alabama § 13A–7–41. Wyoming now refers to burning "with intent to destroy or damage an occupied structure". Wyoming Stats. Ann. § 6–3–101. Oregon proscribes as arson in the first degree the conduct of a person who, "by starting a fire or causing an explosion ... intentionally damages [a]ny property" if "such act recklessly places another person in danger of physical injury or protected property of another in danger of damage." Oregon Rev.Stats. § 164.325. Montana now uses "purposely" in its definition of arson. Montana Code Ann. § 45–6–103.[6] The word "knowingly" is employed in several statutes, although this word sometimes has been construed to indicate general intent. Several states have made arson in the first degree or aggravated arson a crime of specific intent but have left other types of arson as crimes of general intent.[7]

Evolution of arson as a crime in the Federal law also is instructive. As early as 1825, arson was prohibited under certain circumstances as a Federal crime. *See* Act of March 3, 1825, ch. 65, §§ 1 and 2, 4 Stat. 115; Rev.Stat. §§ 5385–87 (1878). Subsequently the offense was codified in Title 18 of the United States Code. *See* 18 U.S.C. §§ 464–65, Act of March 4, 1909, Ch. 321, §§ 285, 286, 35 Stat. 1144. These sections provided:

Sec. 285. Whoever shall willfully and maliciously set fire to, burn, or attempt to burn, or by means of a dangerous explosive destroy or attempt to destroy, any dwelling house, or any store, barn, stable, or other building, parcel of a dwelling house, shall be imprisoned not more than twenty years.

Sec. 286. Whoever shall maliciously set fire to, burn, or attempt to burn, or by any means destroy or injure, or attempt to destroy or injure, any arsenal, armory, magazine, ropewalk, ship house, warehouse, blockhouse, or barrack, or any storehouse, barn, or stable, not parcel of a dwelling house, or any other building not mentioned in the section last preceding, or any vessel built, building, or undergoing repair, or any light-house, or beacon, or any machinery, timber, cables, rigging, or other materials or appliances for building, repairing, or fitting out vessels, or any pile of wood, boards, or other lumber, or any military, naval, or victualing stores, arms, or other munitions of war, shall be fined not more than five thousand dollars and imprisoned not more than twenty years.

In 1948, Congress consolidated these two sections into 18 U.S.C. § 81, which provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously sets fire to or burns, or attempts to set fire to or burn any building, structure or vessel, any machinery or building materials or supplies, military or naval stores, munitions of war, or any structural aids or appliances for navigation or shipping, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

---

6. Other states are Alaska, Arkansas, Connecticut, Delaware, Hawaii, Illinois, Iowa, Kentucky, Maine, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Texas, Utah, Washington, and Wisconsin.

7. *E.g.,* Delaware Code Ann. 11 §§ 801–03; Hawaii Rev.Stats. § 708–820 through 823; Maine Rev.Stats. Ann. 17–A § 802; New Jersey Stats. Ann. § 2C:17–1; Oregon Rev.Stats. § 164.325.

The section continues: "If the building be a dwelling or if the life of any person be placed in jeopardy, he shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." According to the Reviser's Note accompanying the section.[8] "The punishment provisions are new and are graduated with some regard to the gravity of the offense. It was felt that a possible punishment of 20 years for burning a wood pile or injuring or destroying an outbuilding was disproportionate and not in harmony with recent legislation. 80th Congress House Report No. 304." Significantly, neither the language of 18 U.S.C. § 81 nor the Reviser's Note contains any indication that the term "willfully and maliciously" was to be given other than the meaning attributed to the term by the common law in its treatment of arson.

In 1948, Congress also enacted 18 U.S.C. § 1992, which proscribed setting certain fires affecting rail traffic. This section required specific intent and read in part:

> Whoever *willfully sets fire to,* or places any explosive substance on or near, or undermines any tunnel, bridge, viaduct, trestle, track ... *with the intent to* derail, disable, or wreck a train ... operated ... in interstate ... commerce ... [s]hall be fined ... or imprisoned.[9]

Emphasis added.

### B. Treatment of Arson Under Military Law

When Colonel Winthrop wrote his treatise, *Military Law and Precedents,* arson was one of several crimes prohibited during war, insurrection, or rebellion but not defined by Article of War 58—the others being murder, manslaughter, mayhem, robbery, burglary, larceny, rape, and assault and battery with intent to kill or commit rape. In his discussion of the offense,[10] Winthrop stated:

> *The intent.* The burning must be *malicious,* that is to say committed with a criminal or felonious intent. Legal malice, ... does not mean personal spite or hostility. In arson, therefore, it is not essential that the offender shall be actuated by a purpose to cause loss or injury to any particular individual. The "malice" may be express or implied; *express,* where the intent is to burn the particular house which is fired; *implied,* where the burning does not correspond with the precise design of the offender—as where the design is to burn the house of A, and that of B is actually burned instead, or where the burning has resulted from some other felony or criminal act which alone was originally contemplated. But where the burning results not from such an act but from a mere trespass or negligence, the malice necessary to arson will not be implied.

Winthrop, *supra* at 681 (footnotes omitted).

Article of War 93—as it existed when the Uniform Code was being drafted—also prohibited, but did not define, arson. Therefore, presumably the offense was to be treated as it had been at common law. And the 1949 Manual for Courts-Martial described the crime in common-law terms as "the willful and malicious burning of the dwelling house or outhouse of another." Para. 180*c,* Manual for Courts-Martial, U.S. Army, 1949; para. 180*c,* Manual for Courts-Martial, U.S. Air Force, 1949. Although the Manual's discussion of arson did not include any reference to general or specific intent, there is no indication that the intent required would differ from the general intent which sufficed at common law for this offense.

The Articles for the Government of the Navy did not specify the crime of arson; but the offense was punishable under the provisions of Article 22(a), that "[a]ll offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a

---

8. *See* 18 U.S.C.A. § 81.

9. The intent required is that of destroying structures and not actually of wrecking the train itself. *See, e.g., United States v. Dreding,* 547 F.2d 471 (9th Cir.), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1143, 51 L.Ed.2d 562 (1976);

*Stanley v. United States,* 245 F.2d 427 (6th Cir.1957).

10. *See* W. Winthrop, *Military Law and Precedents* at 680–82 (2d ed. 1920 reprint).

court martial may direct." [11] In this connection, paragraph 124 of Naval Courts and Boards, 1937, explains that arson "is provided for under the 22d A.G.N. and by 18 U.S.Code, 464 and 465." Moreover, this manual observes:

> The offense denounced by section 464 of the Code *is substantially the common law crime of arson,* and should be so charged. But the house must be the dwelling house of another, as the offense is against the habitation, not against property as such.

Emphasis supplied. Consistent with this viewpoint, paragraph 152 of Naval Courts and Boards discusses voluntary intoxication as a defense to certain crimes and uses arson as a specific example of a general-intent crime for which voluntary intoxication is no defense. Under the caption "Drunkenness as showing absence of intent," it states:

> [T]here are crimes that can be consummated only where a peculiar and distinctive intent or a conscious deliberation or premeditation has concurred with the act which could not well be possessed or entertained by an intoxicated person ...
> On the other hand, where, to constitute the legal crime, there is required no peculiar intent—no wrongful intent other than that inferable from the act itself— as in cases of assault and battery, rape, *or arson,* evidence that the offender was intoxicated would, strictly, not be admissible in defense.

Emphasis supplied.

### C. The Legislative History of Article 126 of the Code

With respect to the punitive articles of the Uniform Code, Mr. Larkin advised the subcommittee:

> [W]e noticed that most of the civil crimes or the civil types of crimes were not defined, and, in checking the definitions as spelled out in the respective manuals, we found some differences between them—not very many but a few.

The civil crimes in the Articles of War, as defined by the manuals, were generally the definitions in the common law, actually the common law of Maryland which, as a matter of fact, is very close to the Federal law definitions but is not identical.

The civil crimes in the Articles for the Government of the Navy were not defined, except that the Naval courts and boards generally followed the Federal statutory definition; but to the extent that they provided some common law crimes which had never been made statutory, they followed the common law definition. There was enough variance, however, to lead us to the conclusion that since we were trying to draft punitive articles for the three services, we ought to define all of the offenses, and the civil crimes ... not having been defined in the statute before.

So we started from scratch and we examined each offense and *tried to stick as closely as we could to the definition that was commonly used as a definition by both services* and also to adopt whatever ideas we felt were worth-while from some of the more modern State codes. We considered adopting the Federal definition as defined in the Federal code, but, unfortunately, we found there were some offenses that were not defined there, either.

So we looked to all of these sources and relied on most of them and tried to select what we thought was the clearest definition for each of those offenses, *sticking as closely as we could to what was commonly used as a definition by both of the services now* or what was the latest definition in some of the more modern day penal laws.

Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess., reprinted in *Index and Legislature History, Uniform Code of Military Justice* [hereafter cited

---

11. An earlier version of the Articles for the Government of the Navy had provided in Article 32 that "[a]ll crimes ... not specified in the foregoing articles, shall be punished according to the laws and customs in such cases at sea." *Dynes v. Hoover,* 61 U.S. (20 Howard) 65, 79, 15 L.Ed. 838 (1857).

*Index and Legislature History*] 1237–38 (1949) (emphasis supplied).

The Report of the House Armed Services Committee noted:

Most of the civil types of crimes are not defined in existing military law and there are some differences in the crimes which are defined. The civil types of crimes in the Articles of War, as defined by the Manual, are generally based on the common-law definition of the State of Maryland which, as a matter of fact, is very close to Federal definitions of the same offenses.

H.R.Rep. No. 491, 81st Cong. 1st Sess. 35 (1949). This same language appears in S.Rep. No. 486, 81st Cong. 1st Sess. 32 (1949).

The basis for proposed Article 126 was Article of War 93 and Naval Courts and Boards § 124, in connection with its definition of arson under the Code. *Index and Legislative History, supra* at 1233. As we have noted, both the Army and the Navy had used the common-law definition of that crime and had applied the common-law rule that arson was a general-intent crime. The only changes that Congress expressly made were inclusion of structures and property other than "dwelling houses" within the coverage of the statute and establishing different degrees of punishment related to the seriousness of the crime committed.

Of course, Congress was well aware of the difference between general- and specific-intent offenses: At the same time that Article 126 was being considered, Congress was drafting other Articles of the Code wherein specific intent was required.[12] Furthermore, as recently as 1948 Congress had enacted 18 U.S.C. § 1992, which required specific intent for an offense concerning the setting of certain fires.

Everything in the language and the history of the Code suggests that in enacting Article 126, Congress used the common-law language about willful and malicious burnings with the intent to adopt the common-law interpretation of these terms—the very same interpretation which for decades had been utilized by all the Armed Services. If Congress had wished to go further and create a specific-intent offense, this could have been accomplished through use of different statutory language, like that which in later years many states utilized in their arson statutes or like that which Congress itself had already employed in enacting 18 U.S.C. § 1992.

### D. Conclusion

■ If Congress had intended to deviate from the common-law treatment of arson as a general-intent crime, it would not have used the familiar common-law term "willfully and maliciously" in Article 126. Since Congress did use these terms—just as most states did at that time and as Congress itself had done in 18 U.S.C. § 81—we can only conclude that specific intent is not necessary in order to convict a servicemember of either simple or aggravated arson under Article 126.

Under our interpretation, the term "willfully and maliciously" is not rendered nugatory; however, it makes clear that arson cannot be predicated on a fire which results "merely by negligence or accident." *See* para. 205*a*, 1969 Manual, *supra.* However, because these words do not require a specific intent, voluntary intoxication is no defense in an arson prosecution, and the holding of *Greene* to the contrary must be, and it is, overruled.

■ Therefore, appellant's statement that he had not intended to burn the barracks was consistent with his pleas of guilty. The necessary general intent was amply established by his admission that he intended to set fire to the coat hanging in the barracks.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

12. Articles 85, 94, 107, 118, 119, 121, 122, 123, 124, 127, 129, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 894, 907, 918, 919, 921, 922, 923, 924, 927, 929, and 930, respectively, use the words "with intent to" to define the *mens rea* required. Article 123a, UCMJ, 10 U.S.C. § 923a, which was enacted subsequently, also uses this language.