**UNITED STATES**

v.

**Senior Airman John D. MARKS,**
**FR 278–74–6756, United States Air Force.**

**ACM 25895.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Jan. 1987.

Decided 13 Nov. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Major Timothy J. Malloy and Captain G. David Miller.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor and Major Donald R. Langford.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, SESSOMS, BLOMMERS and MURDOCK En banc, Appellate Military Judges.

## DECISION

HOLTE, Judge:

A military judge, sitting alone, found the appellant guilty, contrary to his pleas, of

aggravated arson, a violation of Article 126, U.C.M.J., 10 U.S.C. § 926. The adjudged and approved sentence consists of a bad conduct discharge, confinement for one year and one day, forfeiture of $200.00 per month for seven months and reduction to airman basic.

The appellant's court-martial resulted from a fire in the USAF Regional Hospital, Maxwell Air Force Base, Alabama, in the early hours of 22 August 1986. The appellant was on duty in the hospital emergency room at 0528 hours when the fire alarm sounded. He proceeded to the source of the fire, which was in the vicinity of several canvas litters which were stacked in a upright position under the stairwell. The fire had been extinguished by the appellant and other hospital personnel by the time firefighters arrived on the scene. Investigation revealed that a fire from one of the litters had caused a burning of the paint on the adjacent wall under the stairwell and of a large board affixed to the wall with heavy bolts, to which the litters were attached. The fire had caused the spread of a smoky haze throughout portions of the hospital resulting in a number of patients being evacuated from the wards.

For reasons not fully developed in the record the appellant attracted the suspicion of investigators. When he was initially questioned on 25 September 1986 he denied any knowledge of the fire's origin. However, on 1 October 1986, he acknowledged responsibility and executed a sworn statement following an appropriate advisement of rights. Article 31, U.C.M.J., 10 U.S.C. § 831; *United States v. Tempia*, 16 U.S.C. M.A. 629, 37 C.M.R. 249 (1967). The appellant, who did not subsequently testify on the merits at trial, stated to investigators that he had passed the litters at 0515 hours, 22 August 1986, while on a break from his scheduled place of duty in the emergency room. Having heard that the canvas portions of the litters were flame resistant, he decided to test the validity of this information. He held the flame of a lighter to the canvas material on one of the litters. According to his statement, "It appeared as if nothing happened." The appellant proceeded to his place of duty

and responded to the fire alarm "approx[imately] 20 min[utes] later." The evidence produced at trial reflects that the fire alarm actually sounded 13 minutes later, at 0528 hours.

Appellate defense counsel maintains that the evidence is insufficient to establish the offense of arson, which requires proof of more than a negligent or accidental burning of a structure. M.C.M., Part IV, paragraph 52(c) (1984). Arson is premised upon a willful and malicious burning. *Id.* Proof of arson may rest on circumstantial evidence. *United States v. Huxhold*, 20 M.J. 990 (N.M.C.M.R.1985). On appeal the appellant argues there was insufficient evidence to establish that he entertained the requisite willfulness and maliciousness necessary for a conviction of aggravated arson. We view the evidence differently and affirm.

Before we evaluate the evidence in this case it is necessary to state the common understanding of the critical words "willful and malicious." The word "willful" is defined in Black's Law Dictionary, Fifth Edition (1979), as follows: "proceeding from a conscious motion of will; voluntary. Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary".

The word "malicious" is defined in Black's Law Dictionary, *supra,* as follows: "Characterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse."

DA Pam 27–9, *Military Judges' Benchbook,* Para. 3–99 (May 1982, Change 1, 15 February 1985) has defined these two terms in simpler form. In setting out the elements of the offense of aggravated arson this publication states, "An act is done 'willfully' if done intentionally or on purpose". It further states, "An act is done 'maliciously' if done deliberately and without justification or excuse. The malice required for this offense does not have to amount to ill will or hostility. It is sufficient if a person deliberately and without

justification or excuse burns or sets fire to the dwelling of another".

 The evidence is uncontroverted that the appellant took his lighter and held the flame to the canvas part on one of the litters. Such act on his part cannot be said to be accidental nor can it be said to be a negligent act on his part. Therefore we conclude that such act was deliberate and intentional. The fact that the appellant's act of holding the flame of the lighter to the canvas was deliberate and intentional and without justification or excuse makes such act malicious within the definition of that term as it applies to the law of arson.

 The record is void as to the combustible qualities of the canvas. We conclude that such evidence is not essential to the resolution of this issue before us. A fire erupting from a material that the flame of a lighter has been put in contact with certainly is a natural foreseeable consequence of such act. It is well established that an individual is responsible for the foreseeable consequences of his deliberate acts. Webster's Third New International Dictionary (1967) defines the term "fire resistance" as the degree of resistance of material to fire measured in terms of time of withstanding a standard test fire. It matters not that the canvas did not instantly erupt into flame. Such delayed combustion could have resulted from the way in which the litters were folded or could have been caused by a retardant applied to the litters to make them fire resistant, which is what the appellant thought was the case. In the event that the litters were in fact fire resistant, delayed combustion would be the natural result of such canvas coming into contact with a fire. We conclude this from the above quoted definition of the term fire resistance.

 The fact that the appellant had no intent to cause harm to anyone or to damage any equipment is of no consequence as the crime of arson is a general intent rather than a specific intent crime. *United States v. Acevedo–Velez*, 17 M.J. 1 (C.M.A. 1983). The law of arson clearly states that the arson must be predicated upon a deliberate act of setting a fire, notwithstanding the lack of a specific intent to burn a structure. *United States v. Acevedo–Velez, supra.* Further, the element of willfulness is satisfied when one "knowingly starts a fire without lawful excuse and for some mischievous purpose....." *United States v. Caldwell,* 17 M.J. 8 (C.M.A.1983). For the reasons stated above we conclude that there is sufficient evidence, both direct and circumstantial, to sustain the conviction of the appellant.

The issues personally asserted by the appellant are found to be without merit. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Chief Judge HODGSON, Senior Judge FORAY, Judges MICHALSKI and BLOMMERS concur.

LEWIS, Judge, with whom SESSOMS, Senior Judge, and MURDOCK, Judge, join (dissenting):

We agree with appellate defense counsel that the circumstantial evidence in this case does not contradict the appellant's version of events in his pretrial account to investigators and, thus, does not establish a willful and malicious burning of the hospital structure. M.C.M., Pt. IV, paragraph 52b(1)(b)(ii) (1984). Accordingly, we are not convinced that the appellant committed aggravated arson.

First, it is necessary that we indicate our understanding of what a willful and malicious burning is within the context of arson. The Manual states in this respect: "It must be shown that the accused *set the fire* willfully and maliciously, that is, not merely by negligence or accident." M.C.M., Pt. IV, paragraph 52c(1) (1984) (emphasis added). Does this mean, as the majority opinion suggests, that an act done deliberately which results in a fire, even if unintended and unexpected, subjects one to criminal liability for arson? Short of invoking a felony arson rule in certain select circumstances, we believe the answer is, "not necessarily." On the record in this case the answer must be no.

The majority, in stressing that arson does not require a specific intent to burn a structure, reads entirely too much out of the requirement that a burning must nonetheless be willful and malicious. The two leading cases in recent military law demonstrate that an arsonist must knowingly and deliberately set a fire of some sort whether he specifically intends a structure to be burned as a result thereof or not. In *United States v. Caldwell*, 17 M.J. 8, 10 (C.M.A. 1983), Chief Judge Everett explained that the requirement of willfulness is satisfied when "a servicemember ... *knowingly* starts a fire without lawful excuse and for some mischievous purpose...." (emphasis added). In *Caldwell* the accused's conviction for arson of a dormitory dayroom was affirmed based on a showing that the burning of the structure resulted from his *intentionally* setting fire to a piece of cardboard and placing it in a chair. Similarly, in *United States v. Acevedo–Velez*, 17 M.J. 1, 7 (C.M.A.1983), which provides a virtual restatement of the law of arson, the accused *intentionally* set fire to a field jacket, and the flames ultimately spread to a structure. His conviction of arson was affirmed in that circumstance.

Can we say with certainty from this record that the appellant knowingly or intentionally set fire to one or more of the litters and, thus, is guilty of arson with respect to the subsequent burning to the structure? More pertinently, what did the military judge, sitting as finder of fact, determine? We do not know. The military judge was requested by the trial defense counsel to submit special findings. R.C.M. 918(b). In response, he merely referred to various pieces of photographic and documentary evidence, including a stipulation of fact, and to the testimony of certain witnesses which, considered in their totality, convinced him of the appellant's guilt. Not only did this response not satisfy his obligation to issue special findings, his action leaves us, majority and dissenters alike, to speculate as to how he factually determined the appellant's guilt. We are left with two possible theories of guilt to consider: 1. The appellant deliberately set fire to one or more litters despite his pretrial statement which indicates otherwise. 2. The appellant is guilty of arson, as the majority appears to believe, because he deliberately held the flame of a lighter to a litter whether he intended to set it on fire or not. We will examine these theories in order.

We have used our own knowledge of human nature and the ways of the world as best we are able this far removed from the trial. The evidence falls well short of satisfying us that the appellant deliberately set fire to one or more litters. No testimony was offered from an expert source concerning the probable origin and spread of the fire. However, an agent of the Office of Special Investigations offered the intriguing opinion that the "point of ignition" was at a location well up the wall from where it met the floor. The curious implication of this testimony is that the so-called point of ignition would have been adjacent to the mid-point of any of the upright litters, not toward the lower end where the edge of the canvas material might have been more easily ignited. The record does not reflect the type of lighter that was employed by the appellant. Any person who has used the type of lighter ordinarily purchased over the counter learns that it is well adapted for its intended purpose, lighting a cigarette or cigar with the flame directed in an upright position. A person may well learn that it is a very poor implement for igniting a fire, particularly if the flame has to be directed in other than a straight upright position. Fingers are imperiled as much, if not more, than the material at which the flame is directed. Such an undertaking is often hastily abandoned for good and sufficient cause. In other words, if the available evidence were accepted as supporting a premise that the appellant deliberately set a fire at or near the identified point of ignition, one might well conclude that he chose a highly inefficient means of starting the fire, but he was nevertheless extremely adept in his effort, or lucky. The theory of a deliberately ignited fire is far too tenuous to satisfy the standard of guilt beyond a reasonable

doubt, given the lack of supporting circumstantial evidence.

This leaves us with the theory which, whether it was adopted or not by the military judge, appeals to our brothers in the majority. Portrait of an arsonist: The appellant deliberately holds the flame of a lighter to material which he has heard is flame resistant. The material subsequently combusts. The appellant is liable for the natural and probable consequences of his deliberate act.

Two things are wrong with this scenario. First, the term, natural and probable consequences, smacks more of negligence liability than it does of accountability for deliberate criminal activity. This terminology may have a proper place with respect to arson, however the majority has misapplied the concept. For example, *Acevedo–Velez* and *Caldwell*, suggest that one who deliberately sets a fire may be guilty of arson if, as a natural and probable consequence thereof, the fire spreads to a structure. *See* Chief Judge Everett's discussion in *Caldwell*, 17 M.J., at 10. Admittedly, whether foreseeability has a significant relationship to arson following *Acevedo–Velez* and *Caldwell* is less than clear. At any rate, current case law does not support the proposition that the majority advocates, namely, that an accused may be found guilty of arson if an unintended fire of any sort which eventually spreads to a structure is the natural and probable consequence of his act.

Secondly, and more to the point of this situation, one might well ponder whether an individual, presumably a "layman" insofar as combustibility of flame resistant material is concerned, reasonably foresees that the material will in fact burn if a flame is directly applied to it, particularly if no burning is immediately apparent. We know that the majority has no problem in finding criminal liability in such a circumstance. As previously noted, we can do no better than speculate what the military judge thought about this question or whether he even believed it necessary to consider it. As the majority, we are groping in the dark to a great extent. Proof beyond a reasonable doubt cannot be predicated upon such an exercise in speculation.

Let us assume for the purpose of further discussion that the majority is correct in its interpretation of the law. The appellant held the flame of a lighter to a litter and is criminally responsible for the ultimate burning to the adjacent structure. *Res ipsa loquitur.* This result raises additional issues which cast doubt on the validity of the conviction. A thorough reading of the record of trial leaves one with the impression that one set of counsel or the other performed inartfully, and perhaps inadequately, at trial. If the majority view of arson is correct, the defense tactics were, at the very least, highly questionable. The essential facts upon which the majority relies were contained in a stipulation. The military judge, in rendering what purported to be special findings, stated that he relied, among other things, on a portion of the stipulation which succinctly summarizes the situation before us by reflecting that the appellant passed by the stairwell where the litters were stored, stopped, held the flame of his cigarette lighter to the canvas, and, then, left the area. Nothing in the evidence which was subsequently placed before the military judge served to damage the appellant's interests to any greater extent than they were already damaged by the stipulation.

There are several implications arising from the admission of the stipulation. Defense counsel explained that two of five elements of aggravated arson would be contested, namely, that there was a burning of the structure and that the appellant acted willfully and maliciously. M.C.M., Pt. IV, paragraphs 52b(1)(b)(i), (ii) (1984). We will not elaborate as to the first element except to note that the defense position that no burning of the structure occurred appears to us, in retrospect, to be very tenuous at best. If one accepts the majority view of the concept of willful and malicious burning, and particularly if the military judge did, the defense stipulated the case into a predestined result for all intents and purposes. The prosecution had nothing more to prove and, also in retrospect, probably did not improve its case one iota with the other evidence that was brought forth.

The military judge did not advise the appellant that he had entered into a confessional stipulation. *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977). We recognize that in *United States v. Hagy*, 12 M.J. 739 (A.F.C.M.R.1981), *pet. denied*, 13 M.J. 204 (1982), we held that the *Bertelson* advice is not required where it is clear that the defense is actively contesting an element which might otherwise appear to be satisfied by a stipulation. However, we would be reluctant to apply any such reasoning in this situation. A majority of this court has spoken. In light of the majority view the defense counsel erred as a matter of law in believing that a valid attack could be launched against the element requiring a willful and malicious burning. The stipulation speaks for itself, and it says otherwise.

Our concern about adequacy of counsel is not academic; it represents a live issue. The appellant has filed a submission pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), in which he complains that his counsel did not have sufficient time to prepare for trial. This complaint would appear to have some substance if one were to conclude that the defense preparation consisted primarily of stipulating the case into the hands of the prosecution.

We must, of course, stress that we do not believe that the defense team at trial performed inadequately. We believe, rather, that they possessed a relatively accurate grasp of the law of arson and pursued a sound strategy under the circumstances. We have discussed the implications of the adequacy issue only because they flow logically from the view of arson adopted by the majority.

While we would not affirm the finding of guilty of aggravated arson, we do not address the issue of whether the evidence supports a finding of guilty of a lesser included offense of negligent damage to the hospital structure. The majority, by its resolution, was not required to reach this issue.