UNITED STATES

v.

Mark R. HUXHOLD, 055 64 4659
Aviation Machinist's Mate
Airman (E–3), U.S. Navy.

NMCM 84 1614.

U.S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 20 Dec. 1983.

Decided 30 Aug. 1985.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT W.A. Durliñg, JAGC, USNR, Appellate Government Counsel.

Greg D. McCormack, Civilian Defense Counsel.

Before GORMLEY, C.J. and KERCHEVAL and RAPP, JJ.

GORMLEY, Chief Judge:

At a general court-martial consisting of military judge alone, appellant was found guilty, contrary to his pleas, of arson of a C–118 aircraft at Naval Station, Keflavik, Iceland, a violation of Article 126, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 926. He was sentenced to a dishonorable discharge, confinement at hard labor for seven years, forfeiture of $450.00 per month for the period of confinement, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

Before this Court, appellant assigns the following errors:

I

APPELLANT'S GUILT WAS NOT ESTABLISHED BEYOND A REASONABLE DOUBT.

II

THE MILITARY JUDGE ERRED WHEN HE OVERRULED A DEFENSE OBJECTION TO TRIAL COUNSEL'S ATTEMPT TO IMPEACH PETTY OFFICER D WITH A PRIOR INCONSISTENT STATEMENT.

III

APPELLANT'S SENTENCE TO 7 YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE.

IV

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

V

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT, IN DENYING THE DEFENSE MOTION TO SUPPRESS THE STATEMENTS MADE BY THE APPELLANT.

At approximately 0531 on 1 October 1983, from his security post in Hangar 885, Naval Station, Keflavik, Iceland, Airman First Class (A1C) W, United States Air Force (USAF), observed an individual who was "relatively short, about 5'2" or so, maybe about 130, 145 pounds, around there, slim build, blond hair, wearing what appeared to be a black leather jacket, blue jeans and tennis shoes" running at a hurried pace from behind Tower 2 to a south exit at the rear of the hangar. Seconds after this unidentified individual exited, A1C W received a radio call from another security policeman that he saw what he believed to be flames in between Towers 2 and 3. A1C W immediately went around Tower 2 to investigate and observed that the C–118 aircraft housed in that area was on fire. A1C W then provided a description of the individual seen running from the area to his flight chief who relayed the information to other security policemen.

Staff Sergeant (SSGT) S, USAF, was on duty in a mobile unit that morning and responded to a radio report that there was smoke emanating from Hangar 885. Upon arriving at the scene he was given the

description of the individual who had been seen running from the hangar moments before the fire was initially reported. SSGT S immediately commenced a search of the area outside the rear of the hangar where the individual had exited. Driving along the road by the hangar in the darkness of the early morning, SSGT S "noticed an odd shape in the terrain features." Stopping the vehicle, he recognized the odd shape as being an individual laying in a narrow ditch. From this position in the ditch, the person was peering out at the hangar which was about 75 yards away. SSGT S left his vehicle and asked the individual to come towards him. The individual fled. SSGT S hollered to him to halt but the individual continued to run away. SSGT S pursued and apprehended him, frisked him, and read him his rights. The individual spoke incoherently in what sounded to SSGT S to be an Icelandic speech pattern. When SSGT S radioed for Icelandic police assistance, however, the individual clearly stated he was an American. He was turned over to Naval Station Security and was identified as the appellant in the instant case.

## EFFECTIVE ASSISTANCE OF COUNSEL

Appellant now claims that the findings and sentence should be set aside on the grounds that he was denied his 6th Amendment right to the assistance of counsel. Although appellant was represented by two qualified military attorneys at trial, he alleges that their representation did not amount to the requisite "reasonably effective assistance." *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2054, 80 L.Ed.2d 674 (1984). Appellant asserts that his trial defense counsels' representation was deficient in the following respects:

(1) they made no motion for a change of venue as requested by the appellant;

(2) they made no objection to the introduction of glass particles obtained as the result of the government's allegedly illegal search and seizure of appellant's clothes;

(3) they made an untimely suppression motion on an allegedly illegally obtained admission of the accused;

(4) they failed to object to the continuous leading questions of trial counsel;

(5) they failed to object to the government witness's allegedly improper statement during the government's case in aggravation.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court addressed the issue of ineffective assistance of counsel. The Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. Whether or not counsel's assistance was so defective as to require reversal of a conviction was determined to be dependent upon two components:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* at 2064. Appellant asserts that the alleged errors committed by his defense counsel, delineated above, rendered "his defense not only ineffective, but virtually nonexistent." After examining the record of trial and carefully considering these alleged errors, we disagree. The purported instances of ineffectiveness are discussed seriatim.

### A. *Trial Defense Counsel's Failure To Move For A Change Of Venue*

■ Appellant states that his civilian defense counsel requested his military counsel to request a change of venue for two purposes: (1) to ensure impartial members

who were not familiar with the case; and (2) to permit civilian counsel to be present for trial in order to represent appellant. Paragraph 69e, *Manual for Courts-Martial 1969 (Rev.)* (MCM), states the standard for a change of venue:

> If the accused demonstrates that there exists at the place of trial where the prosecution is pending so great a general atmosphere of prejudice against him that he cannot obtain a fair and impartial trial in that place, he is entitled, upon a motion for a change of venue, to be tried at some other place.

In a sworn affidavit, trial defense counsel stated that, to the best of her recollection, "all persons detailed to the court-martial arrived in Iceland subsequent to the burning of the C–118 aircraft." Thus, defense counsel perceived no general atmosphere of prejudice which would have warranted a change in venue. Additionally, pursuant to the advice of counsel, appellant opted to be tried by military judge alone. Defense counsel stated in their affidavits that this advice was based on two major considerations: Airman Huxhold's inability to testify because of his selective memory concerning the events of 1 October and the military judge's ability to accept more readily the silence of an accused; and the highly technical and circumstantial nature of the evidence which defense counsel felt a military judge would better be able to evaluate in terms of the reasonable doubt standard. Based upon the burden placed upon defense by paragraph 69e, MCM, defense counsel's judgment that there was no "general atmosphere of prejudice," and, finally, the fact that the forum would be a bench-trial and the military judge had arrived on the island only a few days before for the specific purpose of trying the case, we find that the decision not to make what would have been a basically groundless motion was a sound one. Furthermore, the inability of civilian defense counsel to be present at the trial in Iceland is inapposite to a request for change of venue. Appellant could have requested a delay in the proceedings to arrange for counsel's presence. Instead he informed the Court, on more than one occasion, that he waived the right to have his civilian counsel present during the trial. Thus, counsel's decision not to move for a change of venue provides no basis for questioning counsel's competence and appellant suffered no prejudice therefrom.

### B. *Counsel's Failure To Object To The Introduction Of Glass Particles Obtained From The Government's Search And Seizure Of Appellant's Clothes*

◼ Subsequent to his apprehension, the government seized the clothes appellant was wearing during the morning of the incident and subjected them to laboratory analysis. At trial, the government sought to establish appellant's presence at the site of the burnt aircraft that morning by demonstrating that glass discovered on his clothes came from the aircraft. The government introduced this evidence through the testimony of a mineralogist who conducted an analysis of the clothing and the glass found on it, and compared it to the glass found at the scene of the burned aircraft. The expert's conclusion was that the glass from the clothing and the glass collected at the scene came from the same source—the burned C–118. Appellant now maintains that the evidence was obtained as the result of an illegal search and seizure and that it was error for trial defense counsel not to object to this damaging evidence on those grounds. We disagree.

Appellant was apprehended the morning of the incident. His clothes were seized and subsequently sent to an F.B.I. laboratory for analysis. The Supreme Court has ruled that clothing or other belongings may be seized upon the arrival of an accused at a place of detention and later subjected to laboratory analysis, and the results of laboratory tests of such clothing are admissible at trial. *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). *See also United States v. Armstrong*, 9 M.J. 374 (C.M.A. 1980) and *United States v. Coleman*, 41

C.M.R. 832 (NCMR 1970). Thus, making the spurious motion suggested by civilian appellate defense counsel would have served only to weaken defense counsel's credibility and, consequently, the rest of his case.

### C. Failure To Make A Timely Motion To Suppress Appellant's Admission That He Was In The Hangar The Morning Of The Incident

■ Staff Sergeant S's partner the morning of the fire was Airman First Class (A1C) C, USAF. A1C C was present during the apprehension of and subsequent reading of Article 31, 10 U.S.C. § 831 warnings to Airman Huxhold. During his testimony at appellant's trial, on cross-examination, A1C C indicated that the appellant had requested to see an attorney after being read his rights. Immediately following the apprehension, Huxhold was turned over to the custody of Naval Security and A1C C was given the responsibility of standing guard over him. While A1C C was performing this duty, Airman Huxhold, without incitement by Airman C, initiated conversation with him. Airman C told the appellant "quite a few times to be quiet, not to say anything." Airman Huxhold, however, insisted on talking and admitted to A1C C that he had been "waiting for a friend called Joe inside the hangar" that morning. Soon afterwards, appellant was interviewed by Naval Investigative Service (NIS) Agent S. At this time, appellant was again given Article 31 warnings. He expressed the desire to speak with Agent S and, during the interview, "admitted that he had approached the aircraft," and that he "had ran [sic] from the scene." It is these latter admissions, to the NIS agent, which appellant now claims should have been the subject of a suppression motion at trial. Appellant claims that defense counsels' failure to raise this motion constitutes counsel ineffectiveness and that this omission severely prejudiced him at trial.

Appellant bases his claim on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held, in short, that an accused is not subject to further interrogation once he expresses the desire to seek the advice of an attorney. Since the ultimate issue of the admissibility of appellant's statements to the NIS agent is the subject of a separate assignment of error, below, and since we fully discuss *Edwards* and its progeny in our disposition of that assignment of error, we need not discuss the merits of the *Edwards* issue in our consideration of the ineffectiveness claim. While our conclusion respecting that assignment reveals that a motion to suppress would have been futile, we base our findings concerning the ineffectiveness claim on a lack of sufficient prejudice to warrant reversal of appellant's conviction.[1]

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, at 2068. "[A] court hearing an ineffectiveness claim must consider the *totality of the evidence* before the judge or jury." *Id.* (Emphasis added). In the instant case there was more than ample evidence which would allow the trier of fact to conclude that the appellant had set foot in the hangar on the morning in question. The appellant had that morning expressed his intention to go to the hangar, he had been apprehended immediately outside of the hangar, and his clothing contained particles of glass which were scientifically determined to come from the burned C–118. Perhaps most indicative of the lack of prejudice is appellant's unquestionably untainted admission to A1C C, while A1C C was guarding him, that he was in the hangar. This spontaneous admission, uninitiated by A1C C, was clearly

---

1. We are not required to make findings with respect to both deficiency of counsel's performance and the existence of prejudice. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland v. Washington*, 104 S.Ct. at 2069–70.

admissible. *Edwards v. Arizona,* 451 U.S. at 485, 101 S.Ct. at 1885; *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983).

While our disposition of this portion of appellant's ineffectiveness claim rests on our finding of no prejudice, we feel it appropriate to note that trial defense counsel's decision not to raise the motion was reasonable and strategically sound. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct." Strickland v. Washington* at 2066 (emphasis added). In her sworn affidavit, trial defense counsel states that she thoroughly investigated the possibility that Airman Huxhold had invoked his right to counsel upon being apprehended. While A1C C initially indicated that he thought that Huxhold had requested counsel, trial defense counsel recalls that he later recanted that statement and stated that he "merely presumed he requested a lawyer." SSGT S recalled that Huxhold did *not* request lawyer. Defense counsel's conversations with Airman Huxhold confirmed SSGT S's recollection of the rights advisement. Thus, eliminating "the distorting effects of hindsight" caused by A1C C's apparently surprising testimony, and evaluating counsel's conduct "from counsel's perspective at the time," we find that counsel's decision not to make a motion to suppress was perfectly reasonable. This conclusion and counsel's recollection of events is supported by the irresolute nature of A1C C's testimony: "I *believe* he stated that he requested a lawyer." (Emphasis added).

Moreover, as stated by assistant trial defense counsel in his affidavit, the defense theory was to concede that Airman Huxhold was in the hangar since he had a right to be in his workspace and a right to run from the hangar when he saw flames. This strategy was sound when one considers the unbelievability of a denial of his presence in the hangar in light of the above-mentioned weighty circumstantial evidence contradicting any such denial.

D. *The Failure To Object To Leading Questions*

■ We have examined the record of trial with respect to appellant's assertion that trial defense counsel failed to object to leading questions. While we agree that it appears that many of those questions should have been objected to, we note as well that several of them dealt with preliminary matters. Military Rule of Evidence (Mil.R.Evid.) 611(c) permits the use of leading questions if necessary to develop the testimony of a witness. Additionally, the ability to make a claim concerning the effectiveness of counsel "was not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness." *Sallie v. State of North Carolina,* 587 F.2d 636 (4th Cir.1978). In any case, appellant has failed to demonstrate any prejudice resulting from his defense counsels' failure to object.

E. *Failure To Object To Government Witness's Allegedly Improper Statements During The Government's Case In Aggravation*

■ The government called as a witness, in its case on sentencing, the Commanding Officer (CO) of Naval Station, Keflavik, Iceland. Responding to the questions of trial counsel, the CO testified concerning the possibility of the destruction of the hangar and the threat of loss of life and injury had the fire gone unchecked for just a little while longer. Appellant now maintains that this testimony was improper and that defense counsel's failure to object to it constitutes ineffective assistance and reversible error.

The military judge, before he imposed sentence, specifically addressed the testimony complained of and stated on the record that he did not consider it in arriving at an appropriate punishment. Thus, appellant could not have been prejudiced by the introduction of the evidence or counsel's failure to object thereto.

Based on our discussion above, we conclude that appellant's claim of counsel ineffectiveness is without merit.

## THE MILITARY JUDGE'S DENIAL OF DEFENSE COUNSEL'S MOTION TO SUPPRESS STATEMENTS MADE BY THE ACCUSED

■ Appellant's assignment is based on the facts described above concerning appellant's alleged request, upon advisement of his rights, to see an attorney, and the subsequent interview with an NIS agent during which appellant made incriminating statements. Although it is not clear whether appellant actually made a request for counsel at the time of his apprehension, we find no need to venture into that factual realm. Our discussion of this assignment of error assumes that appellant did make a request for counsel.

The facts, reviewed in brief, are as follows: appellant was apprehended by military policemen and given appropriate warnings pursuant to Article 31, UCMJ. Upon being advised of his rights, appellant made a request to see an attorney. He was transferred immediately to the custody of Naval Security where he was guarded that morning by one of his original captors, A1C C. Despite A1C C's strong and repeated admonitions against talking to him, appellant insisted on confessing to A1C C that he had been in the hangar that morning waiting for his friend "Joe." Shortly after spontaneously making these admissions, appellant was interviewed by a NIS agent. The agent advised appellant of his Article 31 rights, and the appellant expressed his desire to talk with the agent. During the interview, appellant made further incriminating statements with respect to his presence in the hangar that morning. At trial, defense counsel moved to suppress the statements made by appellant subsequent to his invocation of the right to counsel. The military judge denied the motion. Appellant now seeks to overturn his conviction on the grounds that the military judge's denial was error in that it contravened the rule established in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

In *Edwards,* the Supreme Court held that:

[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*

*Id.* at 484–485, 101 S.Ct. at 1884–1885. (Footnote omitted) (emphasis added).

In *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Supreme Court held that an accused, after originally making a request for counsel, had initiated further communication with the police by asking a police officer, during a trip from the station house to the jail, "Well, what is going to happen to me now?" *Id.* at 2833. With respect to the accused's subsequent confession in that case, the Court found no violation of the *Edwards* rule since the accused's question to the police officer "was not merely a necessary inquiry arising out of the incidents of the custodial relationship," *Id.* at 2835, "such as a request for a drink of water or a request to use the telephone," *Id.,* but "could reasonably have been interpreted by the police officer as relating generally to the investigation." *Id.* The Court has further established "that an accused who has invoked his Fifth Amendment right to assistance of counsel cannot be subject to official custodial interrogation unless and until the accused (1) 'initiates' further discussions relating to the investigation, and (2) makes a knowing and intelligent waiver of the right to counsel...." *James v. Arizona,* — U.S. —, 105 S.Ct. 398, 400, 83 L.Ed.2d 332 (1984) (J. Brennan dissenting from denial of certiorari) (memorandum decision); *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 395–396, 74 L.Ed.2d 214 (1982); *Oregon v. Bradshaw,* 103 S.Ct.

at 2835; *Edwards v. Arizona*, 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.

In the instant case, appellant "initiated" further discussion "relating to the investigation" when he insisted on telling A1C C about his presence in the hangar on the morning of the fire. Furthermore, we hold that the statements he made to the NIS agent during his interview, subsequent to further advisement under Article 31, constituted a knowing and intelligent waiver of his right to counsel. We find specifically that when the NIS agent again informed the appellant of his Article 31 rights, Airman Huxhold was given "a thorough reminder of his right to counsel prior to official interrogation after an initiation." *James v. Arizona*, 105 S.Ct. at 404; *Wyrick v. Fields*, 103 S.Ct. at 396; *Oregon v. Bradshaw*, 103 S.Ct. at 2833. Thus, appellant's assignment of error is without merit.

### TRIAL COUNSEL'S IMPEACHMENT OF HIS OWN WITNESS WITH A PRIOR INCONSISTENT STATEMENT

■ Petty Officer (PO) D testified for the government that, on 2 October 1983, he had expressed to PO B that he (PO D) thought appellant wanted to get even with his unit, Operational Maintenance Department (OMD). The witness denied, however, that he had told PO B that appellant himself had articulated a desire to get even.

Trial counsel called PO B to the stand and asked him if PO D had related to him that the appellant had stated that he wanted to get even. Defense counsel objected on the grounds that the testimony sought to be elicited constituted double hearsay. Trial counsel urged that the testimony was not hearsay since it was being offered not for the truth of the matter asserted, but for the sole purpose of impeaching PO D. The military judge denied defense counsel's objection and admitted the testimony for purposes of impeachment. Appellant now maintains that the military judge erred in overruling defense counsel's objection and that this error operated to his substantial prejudice.

Mil.R.Evid. 607 permits a party to impeach his own witness. Extrinsic evidence of a prior inconsistent statement is admissible if the witness to be impeached is afforded an opportunity to explain or deny the inconsistency. Mil.R.Evid. 613. PO D, the impeached witness, was given an opportunity to explain his prior inconsistent statement during his direct examination. "Hearsay" is a statement offered to prove the truth of the matter asserted. Mil.R. Evid. 801(c). We find that the testimony of PO B concerning PO D's prior inconsistent statement was not hearsay, and was properly admitted for the limited purpose of impeaching the latter.

### SUFFICIENCY OF THE EVIDENCE

■ Appellant maintains that his guilt was not established beyond a reasonable doubt. We disagree.

The case against the appellant was made up wholly of circumstantial evidence. There was no direct evidence that appellant set the aircraft on fire. We find that the evidence as a whole, however, convinces us beyond a reasonable doubt, that appellant is guilty of the arson of the C–118 aircraft in Hangar 885 in the early morning hours of 1 October 1983.

### PROPRIETY OF APPELLANT'S SENTENCE TO SEVEN YEARS CONFINEMENT AT HARD LABOR

■ Appellant maintains that his sentence is overly severe. We have scrupulously examined the record of trial and attendant documents, and have carefully considered defense counsel's clemency requests and the many letters from appellant pleading for consideration of appellant's young wife and child. We feel compassion for this young man's family and their plight. We cannot, however, countenance the deliberate and malicious setting aflame of government property. The thousands of dollars lost, and the potential for serious injury which results from the indiscriminate and heinous arson of property calls for serious punishment. We find, there-

fore, that appellant's sentence is entirely appropriate.

Appellant's assignments of error are devoid of merit. Accordingly, we affirm the finding of guilty and the sentence as approved by the convening authority.

Judge KERCHEVAL and Judge RAPP concur.