UNITED STATES, Appellee,

v.

**Christopher G. CRUTCHER, Aircrew Survival Equipmentman Basic Airman Apprentice, U.S. Navy, Appellant.**

No. 97–0613.
Crim.App. No. 96–1002.

U.S. Court of Appeals for
the Armed Forces.

Argued May 13, 1998.

Decided Sept. 29, 1998.

For Appellant: *Lieutenant Syed N. Ahmad,* JAGC, USNR (argued).

For Appellee: *Lieutenant Commander Nancy Blankenship Jones,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On December 19, 1995, appellant was tried by general court-martial composed of a military judge sitting alone at Yokosuka, Japan. In accordance with his pleas, he was found guilty of absence without leave (42 days) and aggravated arson, in violation of Articles 86 and 126, Uniform Code of Military Justice, 10 USC §§ 886 and 926, respectively. He was sentenced to a bad-conduct discharge, 36 months' confinement, total forfeitures, and reduction to pay grade E–1. On April 8, 1996, the convening authority approved the adjudged sentence. On January 31, 1997, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

On September 9, 1997, this Court granted review of the following issue:

WHETHER APPELLANT'S PLEA TO THE AGGRAVATED ARSON IS NOT PROVIDENT BECAUSE THE DWELL-

ING WAS SET ON FIRE AS A RESULT OF APPELLANT'S NEGLIGENCE.

We hold that appellant's pleas of guilty to the charge of aggravated arson [1] were provident. *United States v. Marks*, 29 MJ 1 (CMA 1989); *see generally United States v. Prater*, 32 MJ 433, 436 (CMA 1991)("substantial basis" required for appellate court to set aside guilty pleas).

Appellant stipulated to the following facts concerning his plea of guilty to aggravated arson in violation of Article 126:

> At about 2315, the accused returned aboard USS INDEPENDENCE (CV 62) from liberty. The accused went to his berthing area, VAQ 136 90–Man Berthing, 03–177–0–L. At the time of the arson, the berthing was not full, but the following persons were embarked aboard the ship and berthed in the space: AKAA Michael D. Bruso, AMSAN Jeremy M. Romine, USN, AMSAA Anthony J. Winterrowd, USN, AA Ricardo Rivera, and AMSAN Chad Roy Willett.

> At about 2328, the accused gave Rivera a courtesy wake up so that Rivera could go to work. Rivera went to work. After Rivera left, the accused got up and lit a cigarette with a small plastic lighter. While smoking, the accused threw his lit cigarette into a paper trash bag full of various trash that was sitting in front of a television. This fire burned and charred the deck tiles. The fire also caused peripheral scorching in the area.

> The accused got up and locked the port door to the berthing. Then the accused began to light the corner of the bag that he had thrown the cigarette in. The accused started to put holes in the bag by lighting it with his lighter. This fire eventually burned the entire contents of the bag.

> At some earlier point, Rivera had taped two full trash bags (made out of paper) to his rack to keep the light out. These bags may have been initially placed there as a practical joke by others in the berthing,

but Rivera left them there, as they served a purpose. The accused went to the two trash bags and he started lighting the bags with his lighter. The fire initially made holes in the bags and then the fire spread.

> The accused made some effort to subdue the fire, but it burned out of control. While the fire was still going, the accused took out his contact lenses, undressed and climbed into his rack. After a few minutes the fire was still growing and there were large amounts of white smoke in the berthing area. The accused got up out of his rack and woke up Bruso. The accused and Bruso left the berthing area and went to First Class berthing to report the fire. Crutcher tried to call in the fire while Bruso attempted to wake PR1 Shoemaker.

> \* \* \*

> The fire from the trash bags taped to Rivera's rack grew large and ignited secondary fires fueled by the three mattresses on the rack. This fire also burned through an air ventilation vent pipe and its lagging immediately above the fire. This fire burned and charred the top of the lockers, racks and mattresses, deck tiles and ventilation pipe and lagging. The fire caused peripheral scorching throughout the berthing area.

> When the accused lit the bags on fire, the accused acted intentionally or on purpose. When the accused lit the bags on fire, he also acted deliberately and without justification or excuse. The fires had the smell of an electrical fire and created large amounts of white smoke in the berthing that made it very difficult to see or breath inside. This smoke poured into the passageway.

The military judge questioned appellant about this stipulation of fact, as follows:

MJ: Let me ask you this. On 13 August 1995, why were you down in the berthing

---

1. Specification: In that [appellant] did, on board the USS INDEPENDENCE (CV 62), on or about 13 August 1995, willfully and maliciously set on fire an inhabited dwelling, to wit: Squadron VAQ 136 berthing (Compartment 03–177–0L) on board the USS INDEPENDENCE (CV 62), the property of the U.S. Government, of a value of more than $5,000.00.

compartment, described as the VAQ 136 90–man berthing area?

ACC: I slept there, sir.

MJ: *When you started these fires, were these fires willfully and intentionally started by you or were they an accident?*

ACC: *Intentionally, sir.*

MJ: *Tell me why you started the fires?*

ACC: *I was drunk and I was screwing around.*

MJ: How much had you been drinking that evening?

ACC: About two pitchers, sir.

MJ: Of beer or some other kind of beverages?

ACC: Beer, sir.

MJ: Over what period of time?

ACC: Three hours.

MJ: Were you able to walk by yourself or did somebody have to carry you?

ACC: No, sir. I could walk by myself.

MJ: Given the fact that you were drunk at that time, do you remember what happened that evening?

ACC: Yes, sir.

MJ: Do you specifically remember setting the fires?

ACC: Yes, sir.

MJ: Do you specifically remember setting the fires as described in the fashion described in your stipulation?

ACC: Yes, sir.

MJ: *One of the things that I didn't understand when I was reading the stipulation is why, after starting the first fire, you climbed back into your rack?*

ACC: *I got scared and I didn't think anything would get as big as it did.*

MJ: *Why didn't you just put it out?*

ACC: *At the time, sir, all there was were just ashes flying around.*

MJ: Do you believe that you had any legal justification or excuse for your conduct here?

ACC: No, sir.

MJ: Can you tell me why you locked the port door to the berthing area?

ACC: I locked the port door, sir, because I didn't want to be caught by the roving watch smoking cigarettes.

MJ: So, you weren't doing it to contain the blaze inside the berthing area?

ACC: No, sir.

MJ: Your stipulation said that you went to two trash bags and you started lighting the bags with your lighter, and that the fire initially made holes in the bag and then the fire started to spread. It goes on to say that you made some efforts to subdue the fire but it burned out of control. While the fire was still ongoing, it says that you took out your contact lenses, undressed, and climbed back into the rack. After a few minutes, the fire was still growing and there were large amounts of white smoke in the berthing area. Was the fire still burning when you got undressed and got into your rack?

ACC: *No, sir. The only thing that I saw was ashes flying around everywhere.*

MJ: *Did you think that you had put the fire out?*

ACC: *Yes, sir.*

MJ: Did you attempt to look around to see if there was any part of that fire burning?

ACC: The only thing that was burning was the bag that was right in front of me and that, it was out.

MJ: Was the bag—with the fire in that bag, was that the fire that got out of control and caused the damage in the berthing compartment?

ACC: Yes, sir.

MJ: Did you bother to check the bag to see if the fire was out in that bag?

ACC: No, sir.

* * *

MJ: Airman Apprentice Crutcher, how far is the TV area where you lit those two bags of trash on fire from your rack where you sleep?

ACC: About three cubicles, sir.

MJ: When you lit the two bags of trash on fire, you indicated that there was some smoke and some burning ashes flying around, correct?

ACC: Yes, sir.

MJ: Then you left the TV lounge area and went over to your rack?

ACC: Yes, sir.

MJ: *When you did that, were you aware—did you know whether or not the fire was still burning in those two trash bags?*

ACC: *No, sir. I thought if anything was burning, that it would hit the flame retardant mattresses and put itself out.*

MJ: But, you didn't bother checking the trash to see if in fact the fire had gone out, is that correct?

ACC: There was no fire when I went to get in my rack.

MJ: But, did you say if there was still a fire in those trash bags, that you thought the mattress would put it out? I don't understand.

ACC: *The bags were taped by a rack. I figured that once the flames hit the mattresses, that it would just go out.*

MJ: What were in the bags; just paper?

ACC: They were just bags taped up against the racks to keep the light out.

MJ: So, it wasn't a trash bag. It was just paper bags that you set on fire, is that correct?

ACC: Yes, sir.

MJ: *Again, I'm going to ask you, did you bother to check to make sure that everything was out—all of the fire was out before you returned to your rack.*

ACC: *No, sir. I thought everything was out, and I returned to my rack. I didn't bother to check.*

(Emphasis added.)

— — —

Appellant's basic argument in this case is that his guilty-plea responses raise substantial questions about the validity of his guilty

plea to aggravated arson, which require that plea now be set aside. *See generally United States v. Prater, supra.* First, he contends that these responses show that the charged fire in a berthing area of the USS INDE-PENDENCE was a product of his negligence, a type of fire not punishable as arson under Article 126.[2] *See generally* para. 52c(1), Part IV, Manual for Courts–Martial, United States (1995 ed.), and *United States v. Acevedo–Velez,* 17 MJ 1, 7 (CMA 1983). Second, he argues that these responses show affirmative action by him in attempting to put out the trash-bag fires he purposefully set, which "extinguish" any prior intent on his part to burn. *See* Art. 126(a) (willfully and maliciously burn). We reject both these arguments proffered by appellant. *See generally United States v. Marks, supra* (conviction sustained for intentionally igniting supposed flame-retardant canvas litters which later ignited and damaged hospital).

Our starting point in resolving this guilty-plea appeal is Article 45(a), UCMJ, 10 USC § 845(a), which states:

§ 845. Art. 45. Pleas of the accused

(a) If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.

After trial, an appellate court may also set aside a guilty plea if a substantial basis in law and fact exists on the record for questioning the validity of the plea. *See United States v. Prater, supra.* The mere possibility of a defense, however, is not a legally suffi-

2. This Article provides:

§ 926. Art. 126. Arson

(a) Any person subject to this chapter who *willfully and maliciously burns or sets on fire an inhabited dwelling,* or any other structure, movable or immovable, wherein to the knowledge of the offender there is at the time a human being, is guilty of aggravated arson and

shall be punished as a court-martial may direct.

(b) Any person subject to this chapter who willfully and maliciously burns or sets fire to the property of another, except as provided in subsection (a), is guilty of simple arson and shall be punished as a court-martial may direct.

(Emphasis added.)

cient basis for an appellate court to reject an otherwise valid plea. *See United States v. Roane,* 43 MJ 93, 98–99 (1995).

■ Turning to appellant's first argument, he contends that his guilty-plea responses show negligent burning of the berthing area, a type of fire not legally within the scope of Article 126. We note, however, that the record in this case makes clear that appellant, without authority or justification, intentionally set fire to several trash bags in an occupied and secured berthing area of the USS INDEPENDENCE. A conflict may exist between his stipulation of fact and his guilty-plea responses as to whether he made a subsequent attempt to put these fires out. Nevertheless, regardless of the outcome of this dispute, it is irrelevant to our decision concerning the legal propriety of his guilty pleas to aggravated arson. *See generally* para. 44c(2)(a)(i), Part IV, Manual, *supra* (negligence "accompanied by a culpable disregard for the foreseeable consequences to others"); *cf.* para. 85c(2), Part IV, Manual, *supra* (simple negligence).

Neither paragraph 52c(1) states nor our case law holds that a fire resulting from intentional ignition and culpably negligent fire fighting by the ignitor is not within the scope of Article 126. On the contrary, our cases hold that only a malicious and willful setting of a fire is required. *United States v. Acevedo–Velez, supra;* and *United States v. Caldwell,* 17 MJ 8 (CMA 1983). Moreover, the Manual provision cited by appellant states: "It must be shown that the accused set the fire willfully and maliciously, that is, *not merely by negligence or accident.*" (Emphasis added.) *See Acevedo–Velez,* 17 MJ at 7 (citing mere-negligence Manual rule). Even viewing appellant's conduct in its entirety, it cannot be reasonably considered "merely ... negligen[t]." [3]

Finally, one of the cases cited by appellant for his restrictive application of Article 126, *Marks,* 29 MJ at 2 n. 1, affirmed a conviction for aggravated arson in circumstances similar to this case. There, the accused attempted to ignite canvas litters which he thought were flame retardant, but which later ignited and caused fire damage in a hospital. Accordingly, appellant's particular negligent-fire argument provides no substantial basis in law for setting aside his guilty plea to arson. *See also United States v. Corona,* 108 F.3d 565, 571 (5th Cir.1997); *United States v. Gullett,* 75 F.3d 941, 947–48 (4th Cir.) (arson conviction affirmed for property damaged close to other property he actually intended to destroy), *cert. denied,* 519 U.S. 847, 117 S.Ct. 134, 136 L.Ed.2d 83 (1996).

■ Appellant's second argument is somewhat different in its approach. He contends that his subsequent fire-fighting efforts, albeit negligent, "extinguished" any prior intent on his part to burn his ship. *See also United States v. Rios,* 33 MJ 436 (CMA 1991) (defense of abandonment). We note that appellant cites no legal authority for his novel theory on negation of criminal intent,[4] so it cannot be said that it constitutes a legal basis to set aside his guilty pleas. *See generally United States v. MW,* 890 F.2d 239, 241 (10th Cir.1989) (post-ignition conduct does not establish absence of prior knowledge of consequences). Moreover, in terms of equity, it would not logically justify setting aside the guilty plea in appellant's case, where his fire-fighting efforts clearly show a culpable disregard for the safety of others. *See also United States v. Harrison,* 26 MJ 474, 476 (CMA 1988)("[p]ost-trial speculation" as to putative defenses need not "be countenanced").

Finally, even if an accused's post-ignition conduct could have been considered by the factfinder in determining his general intent to commit arson, appellant does not prevail. *See* A. Curtis, *A Treatise on the Law of Arson* § 308 (1936). Here, appellant admitted intentionally setting fire to the bags, and no more was required to establish the re-

---

**3.** After all, it is common knowledge that fire is the nightmare of a naval vessel.

**4.** Appellant's negligently-discarded-cigarette analogy is not legal authority for his "extinguished intent" argument. Moreover, the Ninth Circuit distinguished that situation from arson on the basis that the act of lighting the cigarette was not an unauthorized or mischievous act. *See United States v. Doe (R.S.W.),* 136 F.3d 631, 635 n. 5 (1998). We agree. *See United States v. Caldwell,* 17 MJ 8, 10 (CMA 1983).

quired intent for arson of this dwelling. *See United States v. Doe (R.S.W.),* 136 F.3d 631, 635–36 (9th Cir.1998). Moreover, in his pleas of guilty he conceded this issue and also foreclosed the need for further evidentiary rebuttal by the Government on this factual question. *See United States v. Johnson,* 42 MJ 443, 445 (1995)(accused's "pleas of guilty ... made it unnecessary for" Government to present full case on ambiguity). Accordingly, we reject appellant's argument that his averred fire-fighting efforts somehow invalidated his admission to the requisite intent to burn.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.